IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


MARY McCORNELL                                                      PLAINTIFF

V.                                            CIVIL ACTION NO. 3:04CV730 WS

CITY OF JACKSON, MISSISSIPPI,
AND SOUTHERN HEALTHCARE
AGENCY INCORPORATED                                              DEFENDANTS


<u>MEMORANDUM OPINION AND ORDER</u>

Comes now before the court, defendant City of Jackson, Mississippi's

[hereinafter "City"] motions for summary judgment [docket #s 42, 44] accompanied by

co-defendant Southern Healthcare Agency Incorporated's [hereinafter "Southern

Healthcare"] similar motion for summary judgment [docket # 45].  Defendants submit

their dispositive motions under the aegis of Rules 56(b) and (c).[1]  Plaintiff Mary

McCornell [hereinafter "McCornell"] opposes the City's motions [dockets # 48, 49] but

earlier stipulated to dismissal of all claims against defendant Southern Healthcare

---

[1]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a]
party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any
time, move with or without supporting affidavits for a summary judgment in the party's favor as
to all or any part thereof."

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the
following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter of law.

[docket # 51].  The court then ordered that Southern Healthcare be dismissed from this lawsuit with prejudice [docket # 52].

## Jurisdiction

Plaintiff McCornell brought this suit in this District Court for the Southern District of Mississippi on August 31, 2004.  In her complaint, she asserts under Title 42 U.S.C. §1983 that her rights secured by the Fourth[2] and Fourteenth Amendments[3] to the United States Constitution and various state law rights, namely false arrest, were violated when, at the insistence of defendants, she was subjected to false arrest and denial of due process in a criminal proceeding involving a civil debt.  This court has jurisdiction over these federal and state law claims under the authority of Title 28 U.S.C. § 1331[4] and Title 28 U.S.C. § 1367.[5]

## Facts and Procedural Background

The relevant and undisputed facts provide the following:

On February 28, 2002, Southern Healthcare drafted and presented to McCornell a payroll check, which erroneously was made out in the amount of $18,864.69;  the correct payroll amount due was $717.40.  On March 1, 2002, McCornell cashed the

---

[2]U.S. Const., amend. IV provides, in pertinent part, that no warrants shall issue without probable cause, supported by oath or affirmation.

[3]U.S. Const., amend. XIV, § 1 provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens" or deprive any person of "life, liberty, or property, without due process of law; nor deny . . . equal protection of the laws."

[4]Title 28 U.S.C. § 1331 provides the district court with original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States."

[5]Title 28 U.S.C. § 1367(a) grants the district court with supplemental jurisdiction over claims that form part of the "same case or controversy" as those claims over which original jurisdiction is proper.

check and used the funds to purchase money orders and pay bills.

A few days later, on March 4, 2002, a payroll officer contacted McCornell regarding the error.  McCornell informed the payroll officer that she had spent the money.  She agreed to repay the money and was then advised to come into the Southern Healthcare office to sign paperwork and make satisfactory arrangements to repay the money.

The next day, Tuesday, March 5, another payroll officer telephoned plaintiff and after discussing the possibility of a plan for repayment, McCornell made an appointment to meet with Southern Healthcare officials on Wednesday, March 6, at 4:00 p.m.  This meeting, however, was cancelled when McCornell could not arrive on time.  *Id.* at p. 17; Affidavit of plaintiff at ¶ 24.

On March 8, 2002, Southern Healthcare's Chief Executive Officer (CEO), Jackie McMillan, informed McCornell that if the money was not repaid by noon she, McMillan, would contact the authorities.  The deadline was not met, and that afternoon McMillan filed an incident report against McCornell with the City of Jackson, Mississippi, Police Department [hereinafter "JPD"].

On March 18, 2002, McMillan met with JPD Detective Gardner and then signed an affidavit before Municipal Court Judge Oran Paige charging McCornell with felony false pretense under Mississippi Code 97-19-39.[6]  Judge Paige issued a bench warrant for McCornell's arrest.  On March 19, 2002, two JPD officers went to McCornell's home

---

[6]Miss. Code Ann. 97-19-39 makes it a felony crime for a person, by false pretense and with intent to cheat or defraud another, to obtain from any person money or valuable property valued at $500.00 or greater.

but she was not present.  The next day, March 20, McCornell appeared voluntarily at

JPD, where she was arrested and interviewed on the false pretense charge.  McCornell

voluntarily waived her rights and proceeded to give a voluntary statement.  McCornell

was then released on bond.  Meanwhile, she was named in *State of Mississippi vs.*

*Mary L. McCornell*, No. JPD 02-9691.  The criminal charges were later dismissed upon

the notice of the District Attorney upon the ground that:

> Defendant is working out particulars of restitution in this
> case;  and the ends of justice would best be served by not
> proceeding with prosecution.

The Order of Dismissal was signed on August 20, 2002, by a County Court Judge of the

County Court of the First Judicial District of Hinds County, Mississippi.

### Law and Analysis

Plaintiff accuses both the City of Jackson and Southern Healthcare of violating

her constitutional rights as guaranteed by Title 42 U.S.C. § 1983.  Section 1983

provides as follows:  any person who, under color of State law, subjects a citizen or

other person within United States' jurisdiction to "the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws ... shall be liable to the

party injured in an action at law, suit in equity, or other proper proceeding for redress."

According to plaintiff, the defendants violated § 1983:  (1) by depriving her of privileges

and immunities secured by the Fourteenth Amendment;  and (2) by causing her

unlawful arrest in transgression of the Fourth and Fourteenth Amendments.  The

plaintiff also contends that these same facts constitute a violation of Mississippi state

4

law relative to false arrest.[7]

Plaintiff asserts two additional state law claims, namely abuse of process and malicious prosecution, against only Southern Healthcare.  Both of these claims have since been dismissed from this case.  Plaintiff seeks compensatory damages in the amount of $3,000,000.00 and punitive damages in the amount of $3,000,000.00.

## Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir. 1996) (quoting Fed. R. Civ. P. 56(c)).  In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986);  rather, "it is the province of the jury to access the probative value of the evidence."  *Dennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980).  Facts that are irrelevant or unnecessary to a decision are "non-material" and do not prevent summary judgment.  *Anderson*, 477 U.S. at 242;  *Phillips Oil Co. v. O.C. Corp.*, 812 F.2d 265 (5th Cir. 1987).

In response to a motion for summary judgment, the non-moving party is required to respond with specific proof demonstrating a triable issue of fact as to each of the elements required for establishment of the claim asserted.  *Washington v. Armstrong*

---

[7]Although not specifically codified, the common law tort of false arrest is recognized by the State of Mississippi.

5

*World Indus.,* 839 F.2d 1121, 1122–23 (5th Cir. 1988).  Summary judgment is mandated in any case where a party fails to establish the existence of an element essential to the case and on which the party has the burden of proof.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  Rule 56(c) further requires that the court enter summary judgment if the evidence favoring the non-moving party is not sufficient for the trier of fact to enter a verdict in the non-moving party's favor.  *See Anderson,* 477 U.S. at 252;  *Exxon Corp. v. Burglin,* 4 F.3d 1294, 1297 (5th Cir. 1993).  Summary judgment is improper where the court merely believes it is unlikely that the non-moving party will prevail at trial.  *National Stream Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir. 1962).  The court must resolve all reasonable doubts about the existence of a genuine issue of material fact against the movant.  *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir. 1982).

State law claims for malicious prosecution and abuse of process are asserted only against defendant Southern Healthcare.  Since this party has been dismissed from this litigation with prejudice [docket # 52], these two claims, Counts V and VI of the Complaint, are no longer viable.  The remaining claims against defendant City of Jackson are discussed below:

**Title 42 U.S.C. § 1983 Claims**

As earlier stated, when a party is deprived of any right guaranteed by federal law under color of state law, that party may bring a civil suit arising from this deprivation under Title 42 U.S.C. § 1983.[8]  McCornell claims a deprivation of both her Fourth

---

[8]Title 42 U.S.C. § 1983 imposes civil liability against any person who, under color of State law, subjects a citizen or other person within United States' jurisdiction to "the deprivation

6

Amendment right not to be subjected to a warrant without probable cause and her Fourteenth Amendment right not to be subjected to State enforcement of a law or deprivation of liberty without due process.  These claims, along with her state law claim of false arrest, all stem from the affidavit prepared by Detective Gardner, the warrant issued by Judge Paige, and the execution of the arrest warrant by JPD officers.

### *Fourth Amendment Violation:*

McCornell claims a deprivation of her Fourth Amendment right not to be subjected to a warrant without probable cause.  Detective Gardner assisted Southern Healthcare's CEO McMillan and advised her that under the facts, a charge of felony false pretense was the appropriate charge.  The affidavit was presented to Municipal Court Judge Paige, who issued a bench warrant for McCornell's arrest.  McCornell claims that the detective and the Judge conspired to prosecute her criminally for a civil matter, and that no probable cause existed for the warrant to issue.

Probable cause exists when the totality of the circumstances known at the time of the arrest are sufficient to support a reasonable belief that the suspect has committed an offense.  *Haggerty v. Southern Texas Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004) (internal cites omitted).  Probable cause is determined based on "the facts as known when the arrest warrant is requested, not on facts that may be subsequently developed."  *Keen v. Simpson County*, 904 So.2d 1157, 1161 (Miss. Ct. App. 2004) (citing *Ellis v. State*, 573 So.2d 724, 726 (Miss. 1990).  Where probable cause exists for an arrest, a suit will not lie even if the defendant is later found not guilty.  *Id.* (internal

of any rights, privileges, or immunities secured by the Constitution and laws."

7

cites omitted).

Detective Gardner prepared an affidavit based upon the statement of McMillan, after viewing a photocopy of the check with McCornell's endorsement.  The information presented to him was that McCornell knew she was not entitled to this amount of money but cashed the check and spent the money and, further, that Southern Healthcare had attempted unsuccessfully to recover the funds.  McCornell now contends that when she spent the money she thought Southern Healthcare had paid her a bonus.  This argument is irrelevant to the court's scrutiny of Detective Gardner's acts in preparing the affidavit.  The proper question is, upon the facts presented to him by McMillan, whether Gardner's conduct was reasonable.  The court finds that it was. As presented to Gardner, plaintiff's conduct constituted a crime and he would have been remiss in not pursuing the matter.

Judge Paige likewise based his finding of probable cause upon the facts presented to him in McMillan's sworn affidavit and statements to him, supported by the photocopy of the endorsed check.  Mississippi law permits an arrest warrant to be based on hearsay, so long as underlying facts and circumstances support that hearsay "so as to allow a neutral and detached magistrate to find the existence of probable cause." *Conerly v. State*, 760 So.2d 737, 740 (Miss. 2000).  Judge Paige's task was to "make a practical, common-sense decision based on all the circumstances set forth in the affidavit before him . . ." *Id.*  Based on the facts as set out above, this court is persuaded that Judge Paige's finding of probable cause for issuance of an arrest warrant was reasonable.  When probable cause exists for the issuance of a warrant, the Fourth Amendment is not violated by issuance and service of that warrant. *Keen*,

8

904 So.2d at 1161.

### *Fourteenth Amendment Violation:*

McCornell next claims a violation of her Fourteenth amendment right "not to be prosecuted based on manufactured and false evidence."  Plaintiff's Response to Defendant's, City of Jackson's, Motion for Summary Judgment, p. 2.  She claims that JPD officers "manufactured evidence against her and filed a false affidavit ... to assist [Southern Healthcare] in using the criminal process to collect a civil debt."  *Id.*  In sum, she claims that her due process rights were denied, that she was deprived of privileges and immunities secured by the Fourteenth Amendment by defendants' efforts to use the criminal process to collect a civil debt.

"It is a well recognized principle that the use of criminal process in the court system in an effort to collect a civil debt will support an action for abuse of process." *RS of Torts 2d* § 682.  This case, however, does not fall within the scope of this principle.  Plaintiff's cases upon which she relies are readily distinguishable from the facts at hand, as shown in the below discussion:

In *Dunn v. Koehring Co.*, 546 F.2d 1193 (5th Cir. 1977), the Fifth Circuit affirmed the district court's finding that Koehring launched and then took an instrumental role in pursuing criminal proceedings for private gain.[9]  Mississippi jurisprudence defines abuse of process as "the intentional use of legal process for an improper purpose incompatible with the lawful function of the process by one with an ulterior motive in doing so, and with resulting damages."  (citing *Dunn v. Koehring Co.*, 387 F.Supp. 702,

---

[9]The Fifth Circuit also affirmed the district court's finding that Koehring engaged in abuses of civil process and malicious prosecution.

9

711-14 (S.D. Miss., 1974) *Id.* at 1199.  Hyde Construction Company and Koehring Company litigated parallel breach of warranty actions in Oklahoma federal court and Mississippi state court; final judgment in the amount of $464,450.08 was entered against Koehring in the state court action.  In an effort to avoid paying this judgment, Koehring filed an interpleader action in Oklahoma federal court.  Koehring next brought criminal contempt charges against Mr. Dunn, asking for fines in the amount of the judgment.[10]  Further, Koehring took an active role in the criminal prosecution, sitting with and assisting the United States Attorney prosecuting the case.  The Fifth Circuit affirmed compensatory and punitive damages.

In *Donohoe v. Burd*, 722 F.Supp. 1507 (S.D. Ohio 1989), *aff'd* 923 F.2d 854 (6th Cir. 1991) (Table), the court held that Judge Burd misused his position as a Judge to initiate criminal proceedings against a former business associate, Donohoe.  Donohoe, in bankruptcy proceedings, owed Judge Burd on an outstanding civil debt which appeared to be uncollectible.  At the judge's urging, the prosecutor brought criminal charges against Donohoe in an attempt to compel payment.  Judge Burd participated in the prosecution: he signed the complaint; his court clerk prepared the arrest warrant; Judge Burd sat at counsel table;  and, he directed a witness to appear before the grand jury.  Donohoe's daughter mortgaged her home to pay the debt;  the criminal charges were then immediately dismissed.  The requisite elements - use of the legal process for an ulterior motive;  intentional improper acts in the use of process;  and resultant

---

[10]Hyde was by this time insolvent and had assigned the uncollected judgment to Mr. Dunn as payment of legal fees.  The Court found Koehring was motivated at least in part by a desire to prevent Dunn from receiving any payment.

damages - were all found to be present.  *Id.* at 1521-22.

"Abuse of process is an intentional tort and requires a showing of bad faith." *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 191 (Miss. 1989) (citing *Wilkerson v. Randall*, 180 So.2d 303 (1965)).  The elements for an abuse of process claim are that "defendants made an illegal, improper, perverted use of the process;  they had an ulterior motive or purpose in doing so;  and damages resulted to plaintiffs from the irregularities."  *State for Use and Benefit of Richardson v. Edgeworth*, 214 So.2d 579, 586 (Miss. 1968) (internal citations omitted).

The court finds no such evidence of improper use of process or that an ulterior motive existed for the City's actions.  The plaintiff has not presented any proof of such.  Further, any fair reading of the facts counsel against any such finding.  Plaintiff received money to which she was not entitled, $18,864.69, instead of the correct amount due of $717.40.  She herself acknowledged the mistake and entered negotiations to repay the overage.  Although she contends that she thought the excess was a bonus, reasonable minds could conclude otherwise and rightfully opine that in spending this overage, plaintiff had manifested a criminal disposition.  Therefore, this court finds that the elements for an abuse of process claim are not met.

### *False Arrest under Federal and State Law*

McCornell was arrested on a charge of felony false pretense, Mississippi Code §97-19-39.  The statute was amended in 2003, but at the time of McCornell's arrest, it stated that:

> "Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false

> pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, upon conviction thereof, shall be punished by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding one year, and by fine not exceeding three times the value of the money, property, or thing obtained."

The check was made out to and endorsed by McCornell, who contends that this is not a false token or writing as set out in the statute.  It is undisputed that following Southern Healthcare's error in issuing the check, McCornell spent the money within a few days, thus receiving in excess of $18,000.00 that she did not earn.  Detective Gardner believed that McCornell's act of cashing a payroll check in an amount that Southern Healthcare asserted McCornell knew she was not entitled to constituted a false pretense of entitlement.  This fell within his understanding of the scope of the statute.

The Mississippi Supreme Court has defined the crime of false pretense as "a false representation of a past or existing fact, with the intent to deceive and with the result that the accused obtains something of value from the party deceived.  *State v. Allen*, 505 So.2d 1024, 1025 (Miss. 1987).  A bank check cashed in due course is the instrumentality by which the money is obtained, and thus the equivalent of the money itself. *Martin v. State*, 200 Miss. 142, 26 So. 2d 169, 171 (Miss. 1946).  McCornell knew at the time when she cashed the check and spent the money that the amount of the check was far more than the salary due her, but now asserts that she believed the overpayment of more than $18,000.00 to be a bonus.  McCornell relies on this alleged belief to show that she lacked the necessary intent for the crime of false pretense.

The following Mississippi cases are relevant to the facts now before the court. First, consider *State v. Smith*, 652 So.2d 1126 (Miss. 1995).  A business mistakenly

issued a check for $13,860.00 to a vendor, Smith.  After holding the funds in his account for two weeks, Smith spent the money.  When the business realized its mistake and asked for the money to be returned, Smith claimed inability to pay and was charged with grand larceny.  Smith claimed to have lacked the requisite intent at the time the money was received, pointing out the two week delay before spending it.  The Court found that the larceny statute did not "provide a clear timeline upon which this intent must exist."  When the business realized its mistake and made demand for the check, Smith's failure to return the property was a wrongful possession and "at this time, the requisite intent developed . . ."  *Id.* at 1129.

Next is *Fondren Guaranty Corp. v. Fondren*, 119 B.R. 101 (S.D. Miss. 1990).  In this bankruptcy action, the court held that the debtor's action in cashing a check issued by mistake, spending the proceeds, agreeing at first to repay the money, and then failing to do so, constituted a wilful and malicious injury to the issuer sufficient to render the debt non-dischargeable.  The original complaint sought a determination that the debt was non-dischargeable as debt for money obtained by false pretenses or fraud.  The court found that "cashing the check [in what amounted to a conversion of property] was an act without just cause or excuse and necessarily produced harm . . ."  *Id.* at 105.

Although these cases do not fall under § 97-19-39, dealing instead with larceny and bankruptcy law, the court's reasoning in these cases is equally relevant here.  The false pretense statute does not dictate a timeline for the formation of intent.  The *Smith* analysis that intent may be found when a demand for repayment is not met applies well to this case.  McCornell was first told on March 4th that she would have to repay the money.  This demand was repeated by Southern Healthcare over the next several

13

days, and on March 8th she was given a noon deadline for repayment or authorities would be contacted.  Criminal charges were not filed until March 18th, after McCornell had still not repaid the money.  As in *Fondren*, McCornell initially conceded that the check was issued by mistake and agreed to repay the money, then failed to make repayment.  Southern Healthcare did not file charges immediately, allowing time for McCornell to find a means of repayment, which she failed to do.  This court agrees with the finding in *Fondren* that failure to repay a debt incurred under these circumstances could very well constitute a wilful injury to the issuer and with the finding in *Smith* that a larcenous intent could have developed later.

Plaintiff attempts to make much of her interpretation of §97-19-39, that this is the wrong statute to be applied against her questioned conduct.  Whether this statute is appropriate here is simply one factor this court employs in its probable cause analysis.  Plainly, plaintiff's conduct may amount to some felonious undertaking.  Clearly, courts have chiseled fine definitional lines between grand larceny, embezzlement and false pretense.  Undoubtedly, a prosecutor has the prerogative of submitting additional or modified charges to a Grand Jury.  That plaintiff may have been mischarged matters not at all under these circumstances.  What matters is that the defendants acted in good faith, on facts probably evidencing some felonious conduct.

McCornell's claims for false arrest rely firmly on her assertion that the City of Jackson, through its employees, lacked probable cause for the arrest warrant.  Even if McCornell were able to show malice or improper motive on the part of Detective Gardner in procuring a warrant, she would still have to also show that such malice or improper motive existed on the part of Judge Paige.  *See Jureczki v. City of Seabrook,*

14

*Tex.*, 760 F.2d 666, 669 (5th Cir. 1985) (citing *Smith v. Gonzales*, 670 F.2d 522, 526, *cert. denied*, 1982, 459 U.S. 1137 for proposition that even if an officer acts with malice in procuring a warrant, this act is shielded by an intermediary's decision that probable cause exists to issue the warrant).  Plaintiff has not presented such evidence.  This court finds probable cause did exist for the warrant to issue and that the actions of defendants' officers were reasonable based upon the testimony and evidence submitted by McMillan.  Where an arrest is supported by probable cause, a claim for false arrest fails.  *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001).

## **Holding**

The court finds Southern Healthcare's motion for summary judgment to be moot, as all claims against Southern Healthcare have been dismissed with prejudice.  Finding that plaintiff cannot establish the elements necessary for any of her claims against defendant City of Jackson, the City's motion for summary judgment is granted.  This court dismisses this action with prejudice and will enter a Final Judgment in accordance with the local rules.



**SO ORDERED AND ADJUDGED,** this the 28th day of September, 2006.

s/ **HENRY T. WINGATE**
**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:04cv730WS
Memorandum Opinion and Order